RAMÓN MONTANER, MANAGER, ETC., Appellant, v. INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; JUAN DE DIOS RIVERA, Claimant.

No. 186. Argued January 22, 1940.—Decided July 9, 1940.

264

*George A. Malcolm, Attorney General, (E. Campos del Toro, former Acting Attorney General,* on the brief), *R. Rodríguez Ramos, Deputy Attorney General,* and *Victor J. Vidal González* and *G. Atiles Moréu, Legal Advisers of the State Insurance Fund* for appellant. *M. A. Casiano* and *Virgilio Brunet* for claimant.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

In October 1936, the West India Oil Co. operated a gasoline station in the town of Morovis under the management of Manuel Díaz, Jr. According to the contract which existed between them, Manuel Díaz, Jr., was bound to pay the rental on the premises occupied by the station and to sell there the products of the company. The latter, in its turn, undertook to supply the tanks, pumps, and other appliances that might be necessary for the operation of the station, and further bound itself to cause to be made at its expense any necessary repairs on the equipment and, in a proper case, to replace it by a new one. On the aforesaid date, it became necessary to remove the gasoline station to another locality in the same town, for which purpose, it was necessary to take out the tank from where it was in order to move it to the new loca-

tion, and during the evening of the day on which this was done, a criminal hand drilled a hole in the tank which no one noticed. After the tank had been placed in the new station it was discovered that it leaked, permitting the gasoline to escape. The West India Oil Co. was then notified and its agent for the district comprising Morovis, Juan N. Sotomayor, came. He ordered that the tank be taken out and, upon noticing the perforation, stated that he would notify the company at San Juan in order that its mechanic should be sent to repair the damage; but upon learning afterwards that Antonio Rivera had a blacksmith shop in Morovis and that the latter would charge from $2 to $3, more or less (Rec., pp. 30 and 31) for the work, he engaged Antonio Rivera to do it. Sotomayor directed that the tank be placed near a hydrant and that water be poured into it all night, so that the soldering might be done next day. On the date set for this purpose, Antonio Rivera came to do the work assisted by his nephew Juan Ciro Rivera and his son Artemio Rivera. When the latter applied the torch in order to make the soldering the tank exploded, causing among other damages the death of Juan Ciro Rivera.

Antonio Rivera employed less than four workmen in his shop and, as he was not covered by the Workmen's Compensation Act, he took out no insurance under said act. West India Oil Co., on the contrary, was an employer insured with the State Insurance Fund, for which reason Juan de Dios Rivera, father of the deceased, claimed from the State Insurance Fund the corresponding compensation for the death of his son.

The manager of the Fund denied the compensation sought. Thereupon the claimant appealed to the Industrial Commission which, by a decision of March 10, 1939, dismissed the appeal, affirming the decision of the Manager of the State Insurance Fund. Thereafter the father of the workman asked for a reconsideration and the Industrial Commission reconsidered its decision of March 10 and rendered another

on October 20, 1939, whereby it declared the accident suffered by the workman to be compensable and ordered the manager to pay to the claimant the compensation provided by law. From that decision the manager took an appeal to this court, and he has assigned three errors, to wit:

"1. The Industrial Commission erred in holding that between Antonio Rivera and the West India Oil Company there existed the relation of employer and independent contractor.

"2. The Industrial Commission of Puerto Rico erred in holding that the work performed by Antonio Rivera was not one expressly excepted by section 2 of the act, *supra*, as it was of an incidental or casual character and it was not comprised in the busines, trade, profession, or occupation of his employer.

"3. Conceding for the purposes of the discussion, but without accepting it in any way, that Antonio Rivera was an independent contractor within the purview of the statute, and that Juan Ciro Rivera was a workman employed by said independent contractor, we maintain that the Industrial Commission erred in holding that Juan Ciro Rivera was entitled to the protection of the statute, it having been proved beyond all doubt, without the fact being disputed in any way, that Antonio Rivera was not bound to take out insurance as he did not employ four or more workmen comprised in the Act."

Sections 2, 19, and 38 of the Workmen's Compensation Act, approved April 18, 1935 (Sess. Laws, p. 250), in so far as now pertinent provide:

"Section 2.—The provisions of this Act shall be applicable to all such workmen and employees working for the employers to whom the following paragraph refers. . . Workmen and employees engaged in domestic service and *those whose work is casual and is not included in the business, industry, profession, or occupation of such employer*, and also such persons as work in their homes, are expressly excepted.

"Section 19.—Every insured employer shall, on reporting his annual payrolls, include in said payrolls the wages paid to all the workmen and employees working for or employed by him, whether by the job or under some person with whom the employer contracted for the job, or under a contractor or independent subcontractor employed or contracted by said employer; and all accounts or taxes collected by the State shall be based on the employer's current pay-

roll in which shall be included the above-mentioned laborers; *Provided, That this provision shall not be applicable to employers for whom work is done by an independent contractor who is insured as an employer under the provisions of this Act.*

"Section 38.—*Workman* or *employee* shall be understood to mean any person in the service of any individual, partnership, or corporation regularly employing workmen included under the provisions of this Act; *Provided,* That workmen and employees engaged in domestic service, *those whose work is of a temporary nature* and is not included under the business, industry, profession, or occupation, those who work in their homes, and those whose employers are exempt from the obligations imposed by this Act are expressly excluded.

"* * * * * * * *

"*Temporary Character.*—What constitutes temporary work shall be determined by the Industrial Commission by regulations approved by the Governor of Puerto Rico, consideration being given to the kind of work done, the cost which the same represents to the employer, the duration of such work, and, chiefly, its relation to the business or industry of the employer of the workman or employee who suffers the accident."

As the West India Oil Co. had not contracted directly with Juan Ciro Rivera to have the latter work for it, and as it appears from the evidence that Antonio Rivera was not an insured employer, and that he employed in his shop less than four workmen, the questions raised in this appeal may be reduced to the two following ones:

1. Was Antonio Rivera an independent contractor in relation to the West India Oil Co.?

2. If so, was the work in question of a casual or incidental character, not comprised in the business or occupation in which the West India Oil Co. was engaged?

As appears from the evidence which the Industrial Commission had before it, Antonio Rivera did the work under his own direction, selected his assistants, and was not subject to the control of the West India Oil Co. or of its agents with regard to the manner of accomplishing the soldering.

In the treatise "Words and Phrases" (Permanent Edition, 1940, vol. 9, p. 329 *et seq.*), there are cited among others

the following definitions of the word "contractor" as distinguished from the word "servant":

"Where person employing may prescribe what shall be done, but not how it is to be done or who is to do it, employee is 'contractor' and not 'servant,' although work is to be done under direction and to satisfaction of persons representing employer." *Joslin* v. *Idaho Times Pub. Co.,* 56 Idaho 242, 53 P. 2d. 323, 329.

"Where contract is let for work to be done by another in which contractee reserves no control over means of its accomplishment, but merely as to result, employment is independent one establishing relation of 'contractee' and 'contractor,' and not of 'master' and 'servant.'" *Penn R. R. Co.* v. *Allegheny County,* 324 Pa. 216. 188 A. 178, 179.

It is evident, under the facts proved, that Antonio Rivera was an independent contractor in relation to the West India Oil Co.

 However, it is maintained by the manager that Juan N. Sotomayor did not enter into any contract with Antonio Rivera, and further that said Sotomayor was not authorized to make this kind of contracts in the name of the company.

Regarding the first point, a mere reading of the record is sufficient to conclude that there was evidence tending to show the making of the contract, to which evidence the commission gave full credit, and as this is a finding of fact, this court can not disturb the same there being evidence to support it in the record. As regards the power of Juan N. Sotomayor to make this contract, the evidence shows that he was the representative of the company in a district which comprised several towns, including Morovis, and no matter how limited this authority might have been, it is easy to understand that any person contracting with him for the performance of a work for the company, the value of which would be of from $2 to $3, would be entitled to believe that as such district representative he was authorized to make such

contract. In other words, Sotomayor might be considered as an ostensible agent.

It is not correct to state that the manager had shown that Sotomayor was not authorized to make said contract. On the contrary, nothing appears from the evidence to that effect. We will quote from the testimony of Enrique Amado, Chief of the Personnel of the West India Oil Co., as follows:

"Q. Mr. Sotomayor?
"A. I also know him.
"Q. Who is he?
"A. Agent for the district of Manatí.
"Q. Whose agent?
"A. Of the West India Oil Co.
"Q. Do you know whether Sotomayor can employ any person to do a work for the West India?
"A. At the present time he can not employ any one without authorization.
"Q. But what about October 1936?
"A. *At that time I was not Chief of Personnel.*
"Q. Your were not Chief of Personnel then? Since when are you Chief of Personnel?
"A. Since 1937.
"Q. Since 1937, subsequent to the accident?
"A. Yes.
"Q. And in October 1936, what were you if you filled any office?
"A. *Chief Clerk.*"

■ Up to the present time the Industrial Commission has not determined by regulation, as prescribed by section 38 of the act, what is to be understood by "incidental or casual character"; hence we must resort to the adjudicated cases in order to determine in each instance whether an incidental or casual employment to which the law refers is involved.

The work performed in this case was merely incidental. It was not of the kind regularly performed in the ordinary course of business of the company. Therefore, there is no doubt that it was an incidental or casual work. See on this

point the definition of the words "casual employment" in 6 W. & P., 289 *et seq.*

■ Let us now turn to the last of the questions raised, to wit: Could the work performed by Antonio Rivera in this case be considered as comprised within the business, trade, or occupation of the West India Oil Co.?

The author of an extensive monograph on this subject published in 58 A.L.R. 872,882, referring to the character of the work, says:

"Whether the work which the independent or subcontractor undertakes is within a provision requiring it to be a part or process in the principal's trade or business, or some similar provision, is a question which arises quite frequently and concerning which no set rule can be formulated which will take care of all the cases even in any jurisdiction."

In other words, the question must be determined according to the facts of each particular case. That being so, it is natural that the authorities should be in conflict, there being some jurisdictions where it is maintained that certain facts justify the conclusion that the work was a part of the trade or business of the employer, while in others similar facts are construed in a different way. For example, in the aforesaid monograph which appears in volume 58 A.L.R., we find the following cases: That of *Fox* v. *Fafnir Bearing Co.,* decided by the Supreme Court of Connecticut in 1928 (139 A. 778), where a manufacturer of ball bearings engaged a laborer to wash the windows of its factory and it was held that washing the factory windows was a part or process of the trade or business of the principal employer. However, in the case of *American Radiator Co.* v. *Franzen,* decided by the Supreme Court of Colorado in 1927 (254 P. 160), it was held that washing the windows of a radiator (heating) company was not a part of the business or trade in which the owner of the factory was engaged. See also the cases cited in the monographs in 58 A.L.R. 872, 882, and 105 A.L.R. 580, 588.

In the instant case, although the principal business of the West India Oil Co. seems to be the sale of gasoline, however, we have seen that in order to carry out that business it operated stations located in various towns of the Island, under the conditions already stated, one of which was the furnishing of the equipment, maintaining it in good state of repair and replacing it in case it became unserviceable. After considering all the attendant circumstances of this case, we think that the facts proven justify the conclusion that the repairing of an appliance furnished by it for carrying out its business was a part of the trade or business in which the company was engaged.

The decision appealed from must be affirmed.

Mr. Justice Wolf dissented.